**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

JOHN H. CURRAN,

Plaintiff,

v.

TYSON FOODS, INC.,

Defendant.

Civil No. 00-734 (JRT/FLN)

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR TRANSFER**

---

Lewis A. Remele, Jr. and Frederick E. Finch, BASSFORD LOCKHART TRUESDELL & BRIGGS, 3550 Multifoods Tower, 33 South Sixth Street, Minneapolis, MN 55402, for plaintiff.

Frederick W. Morris, LEONARD, STREET & DEINARD, 150 South Fifth Street, Suite 2300, Minneapolis, MN 55402, for defendant.

Plaintiff John Curran ("Curran") brings claims of defamation, illegal restraint of trade, intentional interference with prospective business advantage, violation of Minn. Stat. § 179.60 (prohibiting blacklisting of employees), and a claim for declaratory judgment against defendant Tyson Foods, Inc. ("Tyson"). This matter is before the Court on defendant's motion to dismiss or transfer venue. For the reasons set forth below, this motion is denied.

FILED SEP 25 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD. ____
DEPUTY CLERK ____

## BACKGROUND

Curran worked for Tyson from 1989 to 1999, when he left to work for ConAgra, which competes with Tyson in the chicken business. Curran was not under contract with Tyson and had not signed a non-compete agreement. Shortly after Curran began working for ConAgra, Tyson commenced a suit in Arkansas chancery court against ConAgra, Curran, and several other former employees, alleging among other things that Curran's employment with ConAgra would lead to the disclosure of Tyson's trade secret information. Two months later, Tyson moved to dismiss Curran and the other individuals from the lawsuit without prejudice, and the suit continued against ConAgra. The court then bifurcated the trial into two phases: phase I, which took place in late 1999, resolved Tyson's request for injunctive relief, and phase II, which was scheduled to take place in August 2000, will address the claims for damages for actual misappropriation.

The Arkansas court entered findings of fact and conclusions of law on the request for injunctive relief on January 4, 2000. The court expressly found that there is no evidence that ConAgra, Curran, or the other employees misappropriated any Tyson trade secrets up through the date of trial. Nevertheless, under the doctrine of "inevitable disclosure," the court found that Curran could not perform his assigned duties at ConAgra without using or disclosing some Tyson trade secrets, and it enjoined ConAgra from employing Curran in the sale and marketing of poultry products for a period of one year. The court noted that ConAgra had agreed to employ Curran in another position if necessary.

## ANALYSIS

### A. Personal Jurisdiction

Tyson first argues that the court lacks personal jurisdiction over it. In order to do business in Minnesota, Tyson procured a certificate of authority to transact business in this state and appointed CT Corporation as its registered agent pursuant to Minn. Stat. § 303.10. CT Corporation is therefore Tyson's agent for service of process. *See* Minn. Stat. § 303.13. The Eighth Circuit, analyzing § 303.10, has held that this scheme constitutes consent to personal jurisdiction in Minnesota. *See Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1200 (8th Cir. 1990). Plaintiff served CT Corporation, and the Court therefore has personal jurisdiction over Tyson. *See id.* at 1199 (noting that consent is a traditional basis of jurisdiction, regardless of whether jurisdiction would exist in the absence of consent). The Court therefore denies this aspect of defendant's motion.

### B. Venue

Tyson contends that venue is not proper in Minnesota because Tyson resides in Arkansas and all the events giving rise to plaintiff's defamation claim occurred in Arkansas. *See* 28 U.S.C. § 1391(a) (stating that venue is proper in a judicial district where a defendant resides or where a substantial part of the events or omissions giving rise to the claim occurred). For purposes of venue, however, a corporation resides anywhere it is subject to personal jurisdiction. *See* 28 U.S.C. § 1391(c). As discussed above, Tyson is subject to personal jurisdiction, and venue is thus proper in this district under § 1391(a).

Tyson alternatively asks the Court to transfer venue to Arkansas pursuant to 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." To prevail on such a motion, a defendant must overcome the strong judicial preference for permitting plaintiff to choose its forum. *See Hoppe v. G.D. Searle & Co.*, 683 F. Supp. 1271, 1276 (D. Minn. 1988). A motion to transfer should be granted only where the defendant makes a clear showing that the action should be transferred, and it must be denied if the effect of a transfer would merely be to shift the inconvenience from one party to the other. *See Norval Indus., Inc. v. Superior Cos.*, 515 F. Supp. 895, 899 (D. Minn. 1981).

Tyson has failed to meet its burden to show that the action should be transferred. The sole basis for Tyson's argument is that most of the witnesses and documents are located in Arkansas. Curran lives in Minnesota, however, and he points out that many of the witnesses who testified in the Arkansas action were not residents of either Arkansas or Minnesota. At best, therefore, the effect of a transfer would be to shift the inconvenience to Curran. Such a shift is impermissible in light of the presumption in favor of a plaintiff's choice of forum, and this aspect of defendant's motion is accordingly denied.

## C. *Rooker-Feldman* Doctrine

Tyson next contends that plaintiff's second, third, fourth, and fifth claims must be dismissed under the *Rooker-Feldman* doctrine.[1] *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Under *Rooker-Feldman*, federal district courts lack subject matter jurisdiction over challenges to state court decisions in judicial proceedings. *See Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995). If the relief requested in federal court would effectively reverse the state court's decision or void its ruling, *Rooker-Feldman* precludes the assertion of federal jurisdiction. *See id.*; *In re Ferren*, 203 F.3d 559, 560 (8th Cir. 2000).

Curran argues that *Rooker-Feldman* should not apply to him because he was dismissed from the Arkansas action at Tyson's behest before the Arkansas court entered its decree. *See Johnson v. De Grandy*, 512 U.S. 997, 1006 (1994) (explaining that the United States' Voting Rights Act claim against Florida was not barred by *Rooker-Feldman* because the United States was not a party to the previous action and had not "directly attacked" the prior state judgment). The Eighth Circuit recently clarified, however, that identity of parties is not a dispositive factor in applying *Rooker-Feldman*. *See Lemonds v. St. Louis County*, 222 F.3d 488, 495 (8th Cir. 2000). While identity or privity of parties is necessary to invoke res judicata, the Eighth Circuit explained that the principles underlying res judicata and *Rooker-Feldman* are not the same. *See id.*

[1] Tyson concedes that plaintiff's defamation claim is not barred by *Rooker-Feldman*.

Whereas res judicata is based largely on the impropriety of permitting parties to have unlimited opportunities to litigate their claims, *Rooker-Feldman* is a jurisdictional doctrine that defines the power of federal district courts. *See id.* Thus, under *Rooker-Feldman*, district courts are without power to review most state judgments, "regardless of who might request them to do so." *Id.* The Eighth Circuit distinguished *Johnson* by noting that the absence of the United States from the state court proceedings in that case was not critical to the Supreme Court's refusal to apply *Rooker-Feldman*. *See id.* at *4 n.6. Accordingly, the Court concludes that Curran's claims in this lawsuit are subject to the *Rooker-Feldman* doctrine, despite the fact that Curran was not a party to the Arkansas decree.

The Arkansas chancery court found that Curran's duties at ConAgra would cause the inevitable disclosure of Tyson's trade secrets, and it restrained ConAgra from employing Curran in the sale and marketing of poultry products for a year. Tyson notes correctly that much of Curran's complaint focuses on Tyson's conduct in commencing litigation against him and in obtaining an injunction against ConAgra prohibiting Curran's employment in the sale and marketing of poultry products. Indeed, in paragraph 16 of his complaint, Curran cites Tyson's allegedly wrongful conduct in "seeking to preclude, and in fact precluding," his employment in ConAgra's turkey business, and in precluding his employment with a competitor without offering him additional consideration. Pl.'s Compl. at 4-5. Curran also apparently faults Tyson's legal arguments before the Arkansas court by citing Tyson's alleged knowledge that the claimed trade

secrets did not satisfy the elements of a trade secret under applicable law, and he further faults Tyson for arguing the inevitable disclosure doctrine without any evidence of actual or threatened disclosure. *See id.* at 5.

A finding favorable to Curran on any of these issues would inevitably require a determination that the state court's judgment was wrong. By citing Tyson for precluding his employment in ConAgra's poultry business without offering him additional compensation, Curran is directly attacking the state decree. Additionally, whether there existed a sufficient legal and evidentiary basis to support a finding of the existence of trade secrets and their inevitable disclosure were matters for the state court to decide. Insofar as Curran's claims are based on these allegations, therefore, they are barred by *Rooker-Feldman*.

Although parts of Curran's claims are based on allegations barred by *Rooker-Feldman*, the Court declines to dismiss Curran's second, third, and fourth claims because they incorporate Curran's defamation allegations, which Tyson concedes are not barred by *Rooker-Feldman*. At this early stage in the litigation, it is difficult to delineate exactly which allegations relate to alleged defamatory statements and which statements or arguments were the subject of the state litigation. For example, in paragraph 16 of the complaint, Curran alleges that Tyson acted with malice "[b]y claiming that Curran threatened to misappropriate customer contract information that he could not even know, because Tyson had changed the relevant customer contracts after Curran left Tyson's employment." Pl.'s Compl. at 4. As the state court found that Curran possessed Tyson's

trade secrets, this allegation could be an attack on the state decree. If Curran is alluding to statements Tyson made in press releases about matters that were not litigated, however, this allegation would not implicate *Rooker-Feldman*. Accordingly, given the sparse state of the record, the Court denies Tyson's motion with respect to Curran's second, third, and fourth causes of action at this time, but it cautions plaintiff that it will not entertain claims for relief based on either the state court decision's to enjoin ConAgra from employing plaintiff or on the court's finding that plaintiff would inevitably disclose trade secrets if employed in the sale and marketing of ConAgra's poultry products.

Tyson also notes that, in connection with Curran's fifth claim, he asks for a declaratory judgment that "Tyson may not restrict or restrain Plaintiff's employment by another employer in the poultry industry or in portions of the poultry industry about which plaintiff could have no knowledge of Defendant's trade secrets." As already discussed, Curran's allegations regarding the state court injunction are nothing more than a bald attack on a state decision that is clearly barred by *Rooker-Feldman*. At oral argument, however, Curran's counsel assured the Court that this claim actually concerns Curran's interest in obtaining employment with other employers in the poultry industry. It is not clear to the Court that this distinction is significant; a declaration that Tyson may not restrict Curran from obtaining employment with employers in the poultry industry generally would appear to encompass a finding that the state court necessarily erred in enjoining Curran's employment with a specific employer. Nonetheless, it is possible that Curran may be able to maintain a claim for declaratory judgment that involves Tyson's

allegedly defamatory statements.[2] So understood, the Court will permit this claim to proceed, but it again cautions plaintiff that the rectitude of the state court decree is not at issue in this case and the Court will not permit plaintiff to litigate it.[3]

## D. Compulsory Counterclaim

Tyson also argues that this suit should be barred because it consists of what would have been compulsory counterclaims in the Arkansas suit. Other than Fed. R. Civ. P. 13(a), which Curran correctly notes is inapplicable in Arkansas state court, Tyson cites no authority to support its argument. Tyson itself moved to dismiss Curran from the state suit shortly after that suit was filed and before the state court issued any decision on the merits. The Court has found no authority for the contention that simply because Curran was at one time a party to the state suit, he is barred from raising what would have been compulsory counterclaims in a later suit despite the fact that he was no longer a party at the time the earlier suit proceeded to a judgment on the merits. Moreover, Curran alleges instances of defamation that occurred after the state court entered its decree; clearly

---

[2] At oral argument, Tyson's counsel expressed concern that this claim is an attempt to prevent Tyson from asserting its legal rights in court. If that is indeed what Curran is attempting to do, the Court may address the propriety or lack thereof of such a course of action at the appropriate time. At this point, the Court simply holds that while there may be a number of reasons why such a claim is not maintainable, *Rooker-Feldman* is not one of them.

[3] In connection with its *Rooker-Feldman* argument, Tyson cites the Full Faith and Credit Act, 28 U.S.C. § 1738, which requires the court to give the same binding effect to the state court decree as it would enjoy in an Arkansas court. Tyson does not attempt to identify what effect Arkansas state courts would give to the state decree in this case. Whatever that effect may be, the *Rooker-Feldman* limitations on plaintiff's claims discussed in the text alleviate the full faith and credit concerns that Tyson raises.

Curran could not be expected to have filed a counterclaim asserting these allegations in a suit to which he was no longer a party. The Court therefore rejects this argument.

**E. Failure to State Claims Upon which Relief May be Granted**

Tyson devotes one paragraph to a wholly conclusory argument that Curran's second, third, fourth, and fifth claims fail to state a claim upon which relief may be granted. On a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the Court must view the allegations in the complaint in a light most favorable to the plaintiff and may not dismiss unless it is clear that no relief could be granted. *See Doe v. Hartz*, 134 F.3d 1339, 1341 (8th Cir. 1998). Tyson does not even attempt to explain why Curran's claims fail to meet this generous standard, and the Court declines to speculate. Tyson's motion to dismiss is therefore denied.

**ORDER**

Based on the submissions of the parties, the arguments of counsel, and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that defendant Tyson Foods, Inc.'s motion to dismiss or transfer [Docket No. 3] is **DENIED.**

DATED: September 25, 2000
at Minneapolis, Minnesota.

John R. Tunheim

JOHN R. TUNHEIM
United States District Judge